UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD ROCHELEAU,

    Plaintiff,                                     Case No. 13-cv-14842
                                              Hon. Matthew F. Leitman

v.

ELDER LIVING CONSTRUCTION,
LLC *et al.*,

    Defendants.

_____/

**ORDER GRANTING DEFENDANTS ELDER LIVING CONSTRUCTION'S AND FIRST ADVANTAGE CORPORATION'S MOTIONS FOR SUMMARY JUDGMENT (ECF ## 39, 41)**

**INTRODUCTION**

In this action, Plaintiff Richard Rocheleau ("Rocheleau") asserts claims against Defendants Environmental Specialty Services, Inc. ("ESS"), First Advantage LNS Screening Solutions, Inc. ("First Advantage"), and Elder Living Construction, LLC ("Elder Living") for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* (the "FCRA"). First Advantage and Elder Living have now moved for summary judgment on the ground that Rocheleau's claims are barred by the FCRA's two-year statute-of-limitations.[1] (*See* ECF ## 39, 41.) For

---

[1] ESS also moved for summary judgment. (*See* ECF #40.) Rocheleau did not contest that motion, and the Court entered a stipulated order granting the motion on April 14, 2014. (*See* ECF #57.)

1

the reasons that follow, the Court **GRANTS** First Advantage's and Elder Living's motions.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 15, 2011, Elder Living ordered a background report on Rocheleau from LexisNexis Screening Solutions, Inc. ("LexisNexis"), First Advantage's predecessor. (*See* Rocheleau Dep., ECF #42-2 at 61, Pg. ID 355; *see also* Declaration of First Advantage Vice President of Operations Matthew B. O'Connor, ECF #42-1 at ¶8.) It is unclear from the record why Elder Living ordered the report.[2]

On September 16, 2011, LexisNexis sent Rocheleau "a notice informing him that it was reporting public record information about him to Elder Living." (O'Connor Decl. at ¶11; *see also* the "September 16 Notice," ECF #41-3, Pg. ID 322.) It appears that LexisNexis made the background report on Rochealeau available to Elder Living at this same time. (*See* O'Connor Decl. at ¶11.)

---

[2] Though it is far from clear, it appears that Elder Living may have requested the report after Rocheleau applied for a job with either Elder Living or Lowe's. Rocheleau implies in his Second Amended Complaint that he applied for a job with Elder Living (*see* Second Amended Complaint, ECF #9 at ¶7), and two notices Rocheleau received in connection with Elder Living's order of the background report reference a job inquiry with Lowe's. (*See, e.g.,* ECF #41-5, Pg. ID 328 and ECF #41-6, Pg. ID 329.) But, at his deposition, Rocheleau denied ever applying for a job with Lowe's, and denied ever applying for a job with, or working for, Elder Living. (*See* Rocheleau Dep. at 27, Pg. ID 346.)

2

On September 19, 2011, LexisNexis sent Rocheleau a second notice informing him that information in the background report "may adversely affect [his] employment status with Lowe's," with which Rocheleau may have applied for a job. (The "September 19 Notice," ECF #41-5, Pg. ID 328.)

Rocheleau received the September 16 and 19 Notices shortly after the date they were mailed in mid-September 2011. (*See* Rocheleau Dep. at 26-27, Pg. ID 345-346; 70-71, Pg. ID 364-365.) He also received a copy of the background report at this same time. (*See* the September 16 and 19 Notices, ECF #41-3, Pg. ID 322 and ECF #41-5, Pg. ID 328.) Rocheleau did not dispute the accuracy or completeness of the background report, but he did object to the report being prepared and disseminated without his permission. Rocheleau thus contacted LexisNexis multiple times in September 2011 to say he had not authorized the background report and that he was "not happy that [it had] been done." (*Id.* at 71-72, Pg. ID 365-366.) According to First Advantage, "LexisNexis has [never] received a dispute from Mr. Rocheleau concerning the accuracy of the background report prepared on him for Elder Living." (O'Connor Decl. at ¶10.)

On September 26, 2011, LexisNexis sent Rocheleau another notice informing him that Lowe's had decided not to hire him, and that this decision "was based in whole or in part on information about [him] contained in the [background report]." (The "September 26 Notice," ECF #41-6, Pg. ID 329.) Rocheleau does

3

not dispute that he received the September 26 Notice in late-September 2011. (*See* Rocheleau Dep. at 78, Pg. ID 372.)

On November 25, 2013, more than two years after Rocheleau first learned about the background report and the possibility that information in the report may have contributed to Lowe's decision not to hire him, Rocheleau filed this action alleging that the Defendants violated the FCRA. (*See* Complaint, ECF #1.) Rocheleau thereafter filed an Amended Complaint (*see* ECF #5) and a Second Amended Complaint (*see* ECF #9) – both of which alleged violations of the FCRA. First Advantage and Elder Living now move for summary judgment, primarily on the ground that Rocheleau failed to file this action before the applicable statute-of-limitations expired. (*See* ECF ## 39, 41.) The Court heard oral argument on April 13, 2015.

## **GOVERNING LEGAL STANDARD**

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252.

4

When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## ANALYSIS

**A.     Rocheleau's FCRA Claims**

In this action, Rocheleau asserts that the Defendants violated the FCRA when they failed to obtain his permission to procure and disseminate his background report. His factual allegations, in their entirety, are as follows:

> 5.  Neither Lexis Nexis, Elderly Living Construction nor ESS obtained the plaintiff's [sic] permission of the plaintiff before obtaining said consumer report, CPA 604(2)(A)(i) and (ii),[3] and never informed the plaintiff in writing before the consumer report was issued that the report would be used to take adverse action based on the report, CPA 604(3)(A), (15 USC 1681).
>
> 6.  Neither Lexis Nexis, Elderly Living Construction nor ESS made the necessary certifications mandated by CPA 604(2)(C)(b)(1).

---

[3] It is not entirely clear from the Second Amended Complaint nor from Rocheleau's responses to Defendants' summary judgment motions which provisions of the FCRA he is attempting to cite when he references sections of the CPA. However, it is clear that none of the provisions relate to a dispute Rocheleau may have had with the *content* of the background report.

7. Elderly Living Construction after learning of the consumer report failed to hire the plaintiff. Elderly Living Construction failed to disclose to the plaintiff a summary of the nature and substance of the communication upon which the adverse action was based. CPA 604(2).

8. Elderly Living Construction then proceeded to provide a copy of the consumer report to plaintiff's current employer ESS who promptly terminated plaintiff.

9. CPA 613(a) states that a consumer reporting agency which furnishes a consumer report for employment purposes complied from public records shall:

>  (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported, or

>  (2) maintain strict procedures designed to insure that whatever public record information which is likely to have an adverse effect on a consumers ability to obtain employment.

10. Defendant, Lexis Nexis failed to strict procedures in releasing plaintiff's information. Defendant Lexis Nexis failed to secure plaintiffs permission to release the report and failed to inform the plaintiff that the report contained information that could result in plaintiff receiving an adverse employment determination.

6

> 11. Defendant, Elderly Living Construction, failed to provide the plaintiff with a summary of the consumer report and failed to obtain the plaintiffs permission before ordering the report and failed to certify compliance with the CPA.
>
> 12. Defendant, ESS, as a subsequent user of the report, failed to disclose to the plaintiff a summary containing the nature and subsequence of the report, failed to obtain the plaintiffs permission to obtain the report and improperly used the report under the CPA.
>
> 13. As a direct and proximate result of all three defendants improperly obtaining the consumer report of the plaintiff and using the report for subsequent adverse employment action, the plaintiff has suffered lost wages and benefits in the amount of $171,111.

(Sec. Am. Compl. at ¶¶ 5-13.)

At no point in this action has Rocheleau claimed that any part of the background report was inaccurate or incomplete, and he has not alleged that the Defendants violated the FCRA by failing to correct any errors or omissions in the report. (*See, e.g.,* O'Connor Decl. at ¶10.)

**B. Rocheleau's Claims Are Barred by the FCRA's Two-Year Statute of Limitations**

A plaintiff asserting a claim under the FRCA must do so within two years of discovering the purported violation:

> **An action to enforce any liability created under this subchapter may be brought** in any appropriate United States district court, without regard to the amount in

7

> controversy, or in any other court of competent jurisdiction, **not later than the earlier of** —
>
> (1) **2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability**; or
>
> (2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p(1)-(2) (emphasis added).

It is undisputed that (1) all of the alleged FCRA violations described in Rocheleau's Second Amended Complaint occurred in September 2011 and (2) Rocheleau discovered the alleged violations no later than the end of September 2011 – when he received the September 16, 19, and 26 Notices. (*See, e.g.,* Rocheleau Dep. at 26-27, Pg. ID 345-346; 70-71, Pg. ID 364-365; 78 at Pg. ID 372.) But Rocheleau did not file this action until November 25, 2013. Because Rocheleau filed this action more than two years after discovering the alleged FCRA violations, the action is time-barred.

The United States Court of Appeals for the Fifth Circuit reached this same conclusion in a very similar case. In *Mack v. Equable Ascent Financial, LLC*, 748 F.3d 663 (5th Cir. 2014), the plaintiff, like Rocheleau, alleged that his consumer credit report had been obtained "without a permissible purpose or [his] consent" in violation of the FCRA. *See id.* at 664. The plaintiff learned of these alleged FCRA violations in May 2009, but he waited until December 2011 – more than

two years later – to file his FRCA action. The Fifth Circuit concluded that the FCRA's two-year limitations period began to run when the plaintiff discovered that his credit report had been obtained without his permission, and the court held that plaintiff had filed his FCRA action too late:

> The violation that Mack alleges is that Hilco obtained his credit report without his consent, which he indisputably discovered in May 2009. Thus … the limitations period began to run when Mack discovered that Hilco had obtained his credit report without his consent. This accords with the general approach under the discovery rule that a limitations period begins to run when a claimant discovers the facts that give rise to a claim and not when a claimant discovers that those facts constitute a legal violation.

*Id.* at 665-666 (internal citation omitted). Just as in *Mack*, the Court concludes here that Rocheleau's FCRA claims are time-barred because Rocheleau failed to file this action within two years of discovering the alleged FCRA violations.

Rocheleau makes only one argument as to why his claims are not barred by the two-year limitations period in 15 U.S.C. § 1681p(1). He argues that (1) another provision of the FRCA, 15 U.S.C. § 1681s-2(b), requires parties to complete a "three-step dispute process" with respect to "any event raised in the [FCRA]"; (2) the two-year statute of limitations in Section 1681p(1) is tolled until the three-step dispute process is completed; and (3) because the three steps in the Section 1681s-2(b) dispute process have either never been completed, or, were completed within the two years prior Rocheleau filing his Complaint, his action is

9

timely filed. (*See, e.g.,* Rocheleau's Response Brief, ECF #48 at 6-7, Pg. ID 476-477.)

The "three-step dispute process" on which Rocheleau relies, however, has nothing at all to do with this case; Rocheleau is simply wrong when he says it applies to "any event raised in" the FCRA. Indeed, that dispute process applies where a plaintiff has contested "the completeness or accuracy of any information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1). And here, Rocheleau has not disputed "the completeness or accuracy" of the background report. (*See, e.g.,* O'Connor Decl. at ¶10.) In fact, when Rocheleau called LexisNexis to complain about the background report, he complained only about the report being issued, *not* about the accuracy or completeness of its contents. (*See, e.g.,* Rocheleau Dep. at 71-72, Pg. ID 365-366.) Simply put, the three-step dispute process has no relevance to this action and does not affect the applicable statute of limitations in any way.

Finally, Rocheleau's reliance on the unpublished Illinois District Court decision in *Pletz v. MBNA America*, 2007 WL 518756 (S.D. Ill. Feb. 15, 2007) is misplaced. Rocheleau cites *Pletz* for the proposition that "[a] section 1681 claim is not ripe until each of [the three steps in the Section 1681s-2(b) dispute process] occur, and the statute of limitations does not begin to run until this requisite dispute process is complete." (Rocheleau Br. at 7, Pg. ID 477.) But in *Pletz*, "the crux of

10

[the plaintiff's] claim [was] that [the defendant] furnished inaccurate information to a consumer reporting agency" – the very type of accuracy-based claim to which the three-step dispute process *does* apply. *Pletz*, 2007 WL 518756, at \*\*2-3. The court in *Pletz* therefore held that the statute of limitations did not begin to run until the parties completed the three-step dispute process. *Pletz* simply does not stand for the proposition that the Section 1681s-2(b) three-step dispute process applies to *all* FCRA claims, nor does *Pletz* establish that the process applies to the specific FCRA claims that Rocheleau has asserted here. Likewise, the court in *Pletz* did not hold (or even suggest) that the statute of limitations does not begin to run on any FCRA claim until the three-step dispute process is complete. And Rocheleau has not provided the Court any authority in which the Section 1681s-2(b) three-step dispute process has been applied in the context that his case arises (i.e., where a plaintiff does not dispute the accuracy or completeness of a background report, but objects to the report being issued at all). There is simply no authority to support Rocheleau's argument that the statute of limitations on his particular FCRA claims was tied in any way to the three-step dispute resolution process.

## CONCLUSION

For all of the reasons stated above, Rocheleau's claims against Elder Living and First Advantage are time-barred pursuant to 15 U.S.C. § 1681p(1).

Accordingly, **IT IS HEREBY ORDERED** that Defendants Elder Living and First Advantage's Motions for Summary Judgment (ECF ## 39, 41) are **GRANTED**.

                                              s/Matthew F. Leitman
                                              MATTHEW F. LEITMAN
Dated: April 23, 2015              UNITED STATES DISTRICT JUDGE

     I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 23, 2015, by electronic means and/or ordinary mail.

                                              s/Holly A. Monda
                                              Case Manager
                                              (313) 234-5113